Bell v. Hunt.

BELL and McLACHLAN vs. HUNT and others.

A bill of interpleader may be filed whenever it is a matter of doubt to which of the defendants the fund in the complainant's hands actually belongs, so that he cannot safely pay it to either.

Who are proper parties to a bill of interpleader.

Where the holder and owner of a bill of exchange is declared a bankrupt, and it is a matter of doubt whether such bill was not within the jurisdiction so as to pass to the assignee in bankruptcy, except as to bona fide holders thereof without notice, the drawer of the bill, who is liable to pay the same to the rightful holder and owner, may file a bill of interpleader against the different claimants of such bill to compel them to settle the right to the same between themselves.

THIS was an appeal, by J. H. Hazard and John Speer, from an order of the late vice chancellor of the first circuit, overruling their several demurrers to the bill of complaint in this cause.

Robert C. Bell, a British subject and a merchant, then domiciled at Quebec, a few days previous to the 21st of November, 1844, committed an act of bankruptcy and fled to the United States, bringing with him something more than £500 sterling, in the bills of different Canada banks; most of which were the bills of the Bank of British North America at Montreal. He applied to the complainants, at their counting room at New-York, under a fictitious name, and sold them the Canada bills, and took from them, in part payment, their bill of exchange upon a banking house in London for £500 sterling; which bill was made payable to the defendant J. Speer, of Belfast in Ireland, a brother-in-law of R. C. Bell; and was sent to him for collection. Soon after the making of the bill of exchange, an agent of the Bank of British North America arrived at New-

York, claiming that the Canada bills which R. C. Bell, under an assumed name, had sold to the complainants, had been fraudulently obtained, and that they belonged to the said bank; and giving notice to the complainants not to pay the bill of exchange, or the price thereof, to R. C. Bell. The complainants thereupon wrote to the banking house in London upon whom the bill of exchange was drawn, not to accept or pay the same; and acceptance was consequently refused. In the mean time a commission of bankruptcy was issued against R. C. Bell in Canada, dated the 10th of December, 1844, for an act of bankruptcy committed before he left Canada and previous to the purchase of the bill of exchange. And on the 31st of the same month the defendant Weston Hunt, residing at Quebec, was appointed the assignee in bankruptcy of all the estate and property of R. C. Bell. He thereupon gave notice to the complainant of the proceedings in bankruptcy and of his appointment as assignee; that he claimed that the bill of exchange, at the time of such appointment, was the property of R. C. Bell, and was in the hands of the latter, or of his agents, in some part of the united kingdom of Great Britain and Ireland, and that the title to the same became thereby vested in Hunt, as such assignee, by virtue of the proceedings in bankruptcy. Payment of the bill was afterwards demanded of the complainants, by an individual who claimed to hold it as the agent of Bell, who was then said to reside in the state of Indiana. And a suit was subsequently brought against them by the defendant J. H. Hazard in his own name, but as he alleged as the agent of, or for the benefit of, the defendant Speer, the original payee of the bill of exchange. The complainants thereupon filed their bill of interpleader in this suit, against Hunt, the assignee in bankruptcy, Hazard, the plaintiff in the suit at law upon the bill, Speer, the payee of the bill, and Bell, who claimed title to it by his agent, to compel them to interplead and settle their rights as to such bill of exchange between themselves.

A. *Taber*, for the appellants. As a bill of interpleader this bill cannot be maintained; because it does not show a title to

Bell v. Hunt.

the bill of exchange in two distinct claimants, each of whom is capable of interpleading. (2 *Story's Eq.* 118, § 812. *Story's Eq. Pl.* 239, §§ 294, 297.) The bill shows that the claimant Hunt is assignee only by force of a foreign bankrupt law, and can have no title to the bill, which is property within the state of New-York, beyond the reach of English laws. (*Abraham v. Plestoro*, 3 *Wend.* 538. 5 *Cranch*, 289. *Story's Conf. of Laws*, 346.) A foreign assignee cannot interplead in our courts. (23 *Wend.* 90. 11 *John.* 488.) The bill also shows that this assignee claims without right; for that the fund belongs to the British and North American Bank of Montreal, and is claimed by an agent of that bank. Nor will a court of equity, under the circumstances of this case, turn this property into a general fund for the benefit of general creditors.

The bill also prays for a discovery from these defendants; but it shows no such interest in the complainants in relation to the subject to which this discovery relates, as entitles them to call on these defendants for a discovery. (*Mitf. Pl.* 187. 8 *Ves.* 398. 13 *Id.* 240. *Crane* v. *Deming*, 7 *Day*, 387.)

*M. Hoffman*, for the respondents. A case is prima facie made out for a bill of interpleader. Two parties demand the fund in the hands of a stakeholder. One has sued at law, the other persists in a claim. (*Badeau* v. *Rogers*, 2 *Paige*, 209.) It is sufficient to sustain the bill, that there is a fair doubt as to the rights of the conflicting claimants. The court does not put the uninterested stakeholder in the situation that at his peril he must decide upon intricate matters of fact, or nice points of law. The rule is that it cannot be sustained, "where it appears from the bill itself that the debt or duty unquestionably belongs to one of the parties, and that the complainant is not ignorant of their rights." (4 *Paige*, 392.) It cannot be said that the case of *Abraham* v. *Plestoro*, (3 *Wend.* 538,) inevitably applies, to and will govern, the present case. As nearly all the judicial talent of the court was against the decision, it may be assumed that distinction will be allowed, and the case allowed to go no further than to rule one of exactly the same cir-

Bell *v.* Hunt.

cumstances. Again, it was held in that case that if the property had been on board a British vessel on the high seas at the time of the commission in bankruptcy, it would have passed by the assignment. Now Bell took the bill with him to England, and proof may be given under the present bill that he went in a British steamer. Again; Senator Oliver's opinion (one of the majority) seems almost of itself to warrant the present suit. The attention of the court is called to the distinction he takes between a perfected commission in bankruptcy not objected to or questioned by the bankrupt, and the case before him of a provisional assignee, the bankrupt contesting its legality and denying knowledge of it. It is said we have shown by our bill that neither party claiming is entitled, but a third party, viz. the Bank of British North America at Montreal. Examining the bill strictly, it will be seen that the averment of fact is, that the representations of the agent sent to New-York were true, viz. that Bell had absconded, and got by criminal acts a considerable amount of money in his possession. But as to the bank notes in question the allegation is only that they, the complainants, received notice of the criminal acts, and that such notes were not the property of Bell, but part of the funds fraudulently procured by him. There is no averment that this is true, that such notes were part of such funds. A point was made below, that the discovery asked for was improper; and the second branch of the demurrer applies to this. The answer is, that some of the discovery prayed is clearly proper; for example, whether the suit is not prosecuted for account of Bell by Hazard, with a view to parties if nothing else. The demurrer is to the whole discovery, and must therefore be overruled, even if a limited demurrer would have been good.

THE CHANCELLOR. This appears to be a proper case for a bill of interpleader. For, upon the case stated in the complainant's bill, it is a matter of doubt to which of the defendants the bill of exchange in question actually belongs. The complainants therefore cannot safely pay it to either.

The case of *Abraham* v. *Plestoro*, (3 *Wend. Rep.* 538,) in-

deed decided that an assignment under the English bankrupt laws could not have the effect to transfer property which was not within the territorial jurisdiction of the English government at the time of such assignment, even as against the bankrupt himself; where the assignment had not been executed by him. But that was only in accordance with a previous decision of the supreme court of the United States, and of several decisions of different state courts, that foreign bankrupt laws have no extra territorial force to transfer property which was not within the jurisdiction of the government under whose laws such transfer was claimed, at the time of the alleged transfer. And the only difference between this court, and the majority of the members of the court for the correction of errors, in the case of *Abraham* v. *Plestoro*, was upon the question whether the property in controversy was constructively within the jurisdiction of the English government at the time the proceedings in bankruptcy were instituted and the provisional assignee appointed. For Senators Stebbins and Maynard, who delivered opinions in favor of the reversal of the order of the chancellor in that case, conceded the point that if the property had been within the operation of the English bankrupt laws, even constructively by being on board of a British vessel upon the high seas, the title to it would have passed under the operation of those laws.

Here the assignee in bankruptcy claims the property in this bill of exchange, upon the ground, as he alleges, that at the time of the issuing of the commission of bankruptcy, and at the time of his appointment as assignee, it was in fact within the British dominions, in the hands of the bankrupt himself or of his agent. If this claim is well founded in fact, I cannot say that the assignee in bankruptcy is not entitled, in equity at least, to recover the amount due upon this bill of exchange, in preference to the bankrupt himself, or any other person except a bona fide holder of the same for a valuable consideration and without notice of the rights of the assignee. For the legal presumption is that the bill was drawn upon funds in the hands of the drawees, who were in London ; so that the bill itself, as

well as the fund appropriated for its payment, were both within the operation of the bankrupt law.

On the other hand, if the bill of exchange as well as the bankrupt himself were within the United States at the time of the issuing of the commission of bankruptcy, and at the time of the appointment of the assignee, I do not see any thing that can protect the complainant from a recovery against them in a suit instituted here, either by the bankrupt himself, or by any other person to whom he has transferred it either with or without consideration. So if it actually belonged to the defendant Speer, at that time, in whose name it was drawn, and not to Bell the bankrupt, Speer may recover the amount thereof from the complainants, either by a suit in his own name, or in the name of Hazard as his endorsee, for his use; if he has thought proper to transfer it to Hazard, for that purpose. And a suit having been brought in the name of the defendant Hazard, he is also a proper party to this bill of interpleader; whether such suit is brought for his own benefit, or for the benefit of Speer as he alleges, or for the benefit of the bankrupt himself, as is probably the fact.

The counsel for the appellants is in an error in supposing that the complainant's bill shows upon its face that the bill of exchange in question belonged to the Bank of British North America in Montreal, upon the ground that it was purchased with funds fraudulently and criminally obtained from that bank by R. C. Bell. The fact that it was purchased with funds thus obtained is not charged in the complainants' bill of complaint. They merely state that an agent of that bank arrived at New-York and gave them notice to that effect, and that they must not pay the bill of exchange, or the price thereof, to R. C. Bell; in consequence of which notice they were induced to write to the drawees not to accept or pay such bill.

The order appealed from is not erroneous; and it must therefore be affirmed with costs. The appellants must pay the costs, and put in their respective answers, within the time allowed for that purpose by the order, or the complainants' bill is to be taken as confessed against them.