NAHUM HORTON EX'R. *v.* BAPTIST CHURCH AND SOCIETY IN
CHESTER, *et als.*

*Chancery.    Interpleader.    Corporation.*

The parties defendants in a bill of interpleader stand before the court to liti-
gate the questions of right pending between them, to the same extent as if
one had brought a bill against the other predicated upon the same matter
and for the same purpose.

When one of the defendants in a bill of interpleader was a church and soci-
ety claiming property under a devise in a will, and the other parties were
heirs at law of the testator contesting the validity of the devise, *held* that
they being the real parties in interest, it was competent for them, without
regard to the orator to make such an adjustment of the controversy as
they might think best, and so end the suit.

When a church and society are an existing organized association acting in a
collective *quasi corporate* character, an agreement of compromise of a suit
by a majority of the members is binding upon the minority.

When after bill and answer, the parties agree upon a compromise and reduce
the same to writing, it may be regarded by the court as tantamount to an
amended answer, and as evidence of the facts embodied in it sufficiently to
base a decree thereon.

This was a bill of interpleader, answer and traverse.

The parties defendants at this stage of the suit agreed upon a
settlement, and submitted to the court the following statement of
facts upon which to base a decree.

This bill was brought by Nahum Horton as the executor of
the last will and testament of Abraham Sawyer, late of said
Chester, deceased, against the heirs of said Abraham, and also
against the First Baptist Church and Society, in said Chester.
The heirs of Sawyer have made answer, which is traversed,
which said answer is referred to and made part of the case.
Said church and society have made no answer. No testimony
has been taken by either of the parties.

It is conceded that the will of Sawyer was duly proved in the
probate court for the district of Windsor, and that the orator
gave bonds in due form of law, and entered upon the discharge
of his duties as such executor, and so far completed the same
that some three years since he advertised for a final settlement
of his account in the probate court aforesaid, at which settlement

the orator presented his account as such executor to said probate court, by which it appeared that, after paying the debts of the deceased, and some small legacies, and the expenses of the administration, there remained some real estate, consisting of a grist mill and water privilege, a small dwelling house, a few acres of land, valued from twenty to twenty-five hundred dollars, and also a small sum of money.

It is further conceded that the heirs of said Abraham, and also said church and society, (by their agents) appeared before said probate court, at the final rendering of said executor's account, as aforesaid, and said heirs claimed that said real estate, and money, should be decreed to them as intestate property, which claim was denied by said probate court, and, therefore, said heirs took an appeal to the county court then next to be held at Woodstock, in said county, which is still pending.

It is further conceded that, after various propositions between said heirs, and said church, relating to the property in controversy, it was finally agreed by and between said heirs and said church and society, that said heirs should pay said church the sum of eleven hundred dollars. and also pay all the legal taxable costs in both the present chancery suit, and said appeal from probate, as aforesaid; and should also pay the orator's solicitors the full amount of their charges in the present chancery suit, and the attornies' charges in said appeal; and it is further agreed that said church and society, in consideration thereof, consented and promised to surrender to said heirs all rights to the estate which they might, in any event, claim under said will of Abraham Sawyer, and in pursuance of the foregoing agreements, said heirs have paid over to said church, and said church have received said sum of eleven hundred dollars; and said heirs have already paid over in part payment of said costs, and charges, in said chancery suit, and said appeal, the sum of two hundred and fifty dollars, leaving a balance still due, which they are ready to pay when the amount is ascertained; and it is further conceded that said church has directed their solicitor in this suit, to wit: William Rounds, Esq., to make no further defence, either in this suit, or in the appeal for them.

It is conceded by the heirs of said Sawyer that Hubbard

Ingraham, John F. Hawks, George Wilson, Nahum Horton, Nathaniel Smith, and Jeremiah Rounds, are members of the Baptist society in Chester, and that as members of said society, they are dissatisfied with the course which has been pursued in relation to the property willed to said church and society, by Abraham Sawyer, late of Chester.

Also that Nathaniel Smith, Lydia Smith, and Susan Whitney, are members of said Baptist church, and, as members of said church, they are dissatisfied with the course which has been pursued in relation to the property willed to said Baptist church and society by said Sawyer.

It is also conceded by the heirs of said Abraham Sawyer that Nahum Horton, executor of said Sawyer's last will and testament, has always opposed, and still is opposed, to the pretended settlement which the heirs of said Sawyer claim to have effected with the said church and society ; and that as executor of said will he has never consented to said supposed settlement, and that he is anxious that the provisions of the said testator's will be carried out.

It is further conceded that the whole number who subscribed the constitution of said society is fifty-six, and of this number twenty-eight have either died or moved away.

It is further conceded that there are now living and within attending distance of said church, and in regular standing, sixty-seven members who have signed a written statement that they are satisfied with said settlement, and that the whole number who belong to the church, and live within attending distance, is eighty-seven.

On the foregoing facts, REDFIELD, chancellor, at the May term, 1860, dismissed the bill *pro forma* without costs to any party except the executor.

The executor appealed.

*Stoughton & Grant*, for the orator.

*L. Adams*, for the heirs-at-law.

BARRETT, J. The bill in this case was obviously designed to be, and bears the leading characteristics, in its frame and

prayer, of, a bill of interpleader, to procure of the court a determination whether the propetry specifically devised to the Baptist church and society, belonged to said church and society, under the will, or to the heirs-at-law of the testator Sawyer, so that the orator, as executor of the will of said Sawyer, might, as between said parties, acquit himself of further liability, by making a disposition of it according as the right should be determined in favor of the one party or the other

It becomes unnecessary to discuss or determine several questions made, and others suggested in the argument; for, if it were to be assumed that the said heirs are entitled to the property, of course nobody could raise any question as between them and the church and society, in reference to the agreement as to the disposition of said property.

The case presents the two sets of claimants in the attitude of active controversy before the proper courts, asserting and seeking to maintain their respective hostile rights. The executor had proved the will, and had proceeded to administer and appropriate the estate conformably to the will, down to the point of making a final close, by relieving himself of the property specifically devised to the church and society. At this point the heirs of the testator interposed their claim to said property, on the ground that said devise could not be sustained in law. The matter having been heard and determined in the probate court, an appeal was duly taken by the heirs to the county court, where the case was pending for a due course of litigation, for the purpose of settling the controverted claim of right between the parties.

When the case there was ripe, and, in the course of the court, was about being reached for trial, the executor, conceiving that the peculiar powers of a court of equity were necessary in order to a full adjudication of all the rights, interests, and duties of the said claimants, and of himself as executor, brought this bill. Though as to questions of strict legal right between said claimants, the court of law might have had ample powers, still the decision of those questions might have been such, as to leave the matter in such plight as to have rendered necessary to the entire immunity of the executor, some authoritative direction as

to the disposition of the property, which court of chancery alone was competent to make.

Assuming then the propriety of the course taken by the executor in bringing this bill, it is obvious that one effect of it was to transfer the forum of controversy between the claimants from the court of law to the court of chancery. When the defendants as hostile claimants were brought before the court of chancery, they then stood there to litigate the question of right pending between them to the same intents as if the one party had brought a bill against the other predicated upon the same matter, and for the same purposes.

Being thus before the court of chancery in the attitude of hostile litigants, they proceeded amicably to compromise and adjust the subject matter of the controversy. Both of said parties are before this court manifesting a willingness to abide by said adjustment, and to have the matter ended by such an order as shall at the same time carry out the adjustment, and direct a safe course for the orator, as executor, to pursue, in order to fully discharge his official duty under the will.

The orator is the only party of record that appears before us to object to the propriety and validity of that adjustment. Though we do not propose to put our decision upon the ground, that, in the posture in which he has·placed himself as orator in this bill, he has no right to interfere as between the other parties in the litigation, or adjustment of the controversy between them, still it may be proper to give a moment's attention to the subject of the orator's position and prerogative in such a case.

It is laid down in the text books and illustrated by the cases, that, in a bill of interpleader, it is necessary that the plaintiff should state his own rights, and thereby negative any interest in the thing in controversy. Story Eq Pl §292. The very foundation of this bill is, that he is a mere holder of the stake which is equally contested by the defendants, and that he is wholly indifferent between them. Ib. §297. In *Hoggart* v. *Cutts*, 1 Craig & Phill. 204, cited in 3 Danl. Ch. Pr. 1753, Lord COTTENHAM said : " The definition of interpleader is not and cannot now be disputed. It is where the plaintiff says, I have a fund in my possession, in which I claim no personal interest, and to which

you, the defendants, set up conflicting claims; pay me my costs, and I will bring the fund into court, and you shall contest it between yourselves. The case must be one in which the fund is matter of contest between two parties, and in which the litigation between those parties will decide all their respective rights with regard to the fund." See also the text Ib. 1759.

In recognition of these rules, the plaintiff brought this bill, and in substantial compliance with their requirements, representing himself as a mere indifferent stake-holder between the counter-claimants, who assert rights to the fund or property in his hands.

It follows hence, that when the contesting parties are brought before the court, the orator may then lay off, as the saying is, and quietly await the result of the conflict, being sure, that, so far as he is concerned, he will enjoy immunity in the conflict, and safety in the result.

The important question is, whether it was competent on the part of the church and society to enter into the compromise; for, though in the posture in which the orator stands in this bill, it is of no concern to him whether so or not, still it becomes the duty of the court, with reference to the rights of the parties under and in reference to the will, to see to it that the property is lawfully and properly appropriated.

It is to be assumed that, at the time said compromise was made, it was contingent upon the result of the pending litigation, whether the church and society, or the heirs of the testator would be held entitled to the property. If the church and society were entitled to hold it, it would be upon the ground that it was an association so constituted and organized as, in the eye of the law, to be capable of taking the devise in the manner, upon the conditions, and for the purposes specified in the will;—and it is clear that, according to the terms of the will, said church and society were primarily to be regarded both as trustee and *cestui que trust*. So that with reference to present rights, both legal and beneficial, said church and society were the only party in interest.

Now upon the assumption that is made in behalf of the orator as against the validity of that compromise, that said church and

society were thus the sole party in interest, it is necessarily implied that that association is capable of doing all things necessary and proper for the protection of that interest.

This would seem to imply that, in a controversy pending, of which the result was doubtful, that must in any event, if prosecuted, be expensive, and which went to the very right of the association to hold any of the property, it was competent for the association to make terms of adjustment that should secure a substantial benefit, consistent with and in pursuance of the provisions of the will, free from the doubt that hung over the question of their right, and free from the hazard of having the whole property spent in litigation, so that the right, if ultimately established in its favor, would be barren and worthless.

It is no answer to say that the testator intended the church and society should have the whole property devised, and such a compromise is in violation of the provisions of the will ;—for that is begging the very question that lies at the bottom of the controversy—it is assuming that the church and society are entitled under the will,—the very thing that the heirs deny—the very controversy which the compromise was designed to settle.

In a question of controverted right, of such a character as this we think it would be difficult to find a precedent in the adjudged cases, or to suggest a reason based on any recognized principle, that would stand in the way of the real parties in title and interest, legal and equitable, from entering into a compromise, instead of pushing the controversy through a course of sharp, persistent and expensive litigation—each subject to the hazard of final defeat in their respective claims of right, and both certain of being subjected to inconvenient, if not ruinous expense.

We see nothing in this case indicating any want of judicious discretion, and practical good faith on the part of the church and society, in reference to the intentions of the testator, as manifested by the provisions of the will. They realize eleven hundred dollars, clear of contingency and controversy, so far as their right to *take and hold* is concerned. As to the future management, use and application of the fund, there is at present no question before us,—nor could any be raised by the orator under this bill.

Another question is made, viz: whether it appears that the church and society have really made a valid agreement, that the court ought to recognize,—and this is raised upon the fact that, four or five members of the association, and three members of the church are dissatisfied with the adjustment, and that the orator himself, as a member of the church, is also dissatisfied.

In this respect the orator stands only upon his rights as a member of the church, and has no more on account of his being executor of the will and orator in this bill. The point is, whether the non-concurrence and protest of these individuals can be regarded as effectual to prevent the church and society from entering into the compromise.

It is clear that the devise was to the church and society, as an existing organized association, in a collective, quasi corporate character. It is clear that the orator brought his bill with this idea of it in his own mind. It is clear that this must be assumed to be so, in order to uphold the devise either in respect to the legal title, or the beneficial uses provided for. The agreed statement of facts, assumes that such was the character and position of the church and society in its relations as devisee, and as a party to the controversy with the heirs.

Now that statement of facts says : " it was finally agreed by and between said heirs and said church and society, that said heirs should pay," etc. How agreed ?—certainly not by going to each member, and making him a personal party by his several and independent assent,—but by the action of the church and society in their organized character—acting as an associated individual entity. This is the only idea which the law would recognize as imported by all the facts, and by the language used in setting forth the agreement. And in the absence of any showing to the contrary, the presumption is conclusive, that the action of the association in making that agreement was conducted in due form and in compliance with all legal requisites. It is then to be held that the agreement was made by a majority vote of the association regularly and properly taken ; and if so, it is not to be questioned now, that such vote is valid, and renders the act thereby consummated, binding upon the association both as between the members thereof and also in reference to other

parties with whom the association thereby contracts upon lawful and sufficient consideration. See Ang. & A. on 'corp., §499, and cases cited.

The dissatisfaction and dissent of the individuals named, therefore, in no way affect the validity of the agreement as an act of the association, whether it was expressed by voting against the proposition when the subject was acted upon by the association, or by protesting against such action after it had been taken and consummated.

In pursuance of these views, it only remains to indicate the proper disposition to be made of the case.

There is an apparent awkwardness in proceeding to a final decree, upon grounds that are not developed by the pleadings. Regularly, after the agreement of compromise had been consummated, that matter should have been brought upon the record by additional answers. It was not so done; but it was obviously the idea and intention of the parties, that, by filing the agreed statement of facts in the case, it would be treated as part of the record and in substitution of further answers.

For the purpose of avoiding delay in consummating this matter, we are disposed to treat it, as it was treated in the court of chancery, and regard this agreed statement of facts as tantamount to an answer of the parties to it, as also as evidence of the facts therein embodied.

- The decree of the chancellor is therefore reversed. As to the property covered by the devise to said church and society, the orator is to be dismissed from the bill with his costs—to be made a charge upon said property. And as to that property, as well as to the residue of the estate in his hands not subject to disposition under the will, the same is to be surrendered, and delivered by the executor to said heirs of said Sawyer. And as to said heirs and said church and society, the agreement set forth in said agreed state of facts is to be confirmed, and the said parties thereto are to do, perform, and to hold and enjoy the said property conformably to said agreement, so far as the same is subject to the terms and provisions of said agreement,—and that as between said parties the matter of costs is to stand upon said agreement, and to be paid accordingly.