## Case No. 3,940.

DOAN v. COMPTON et al.

[2 N. B. R. 607 (Quarto 182).] [1]

District Court, E. D. Missouri. 1869.

ACTS OF BANKRUPTCY — RETURN OF GOODS ORDERED—TEMPORARY SUSPENSION OF PAYMENTS.

1. Pending negotiations for an extension of time on debtor's business paper, a piano ordered for a customer who refused to receive it, was returned to the sellers. Held, that the return thereof was not a preference of creditors, or an act of bankruptcy.

[Cited in Re Gregg. Case No. 5.797; Baldwin v. Wilder, Id. 806.]

[1] [Reprinted by permission.]

2. A firm suspended payment of their commercial paper and did not resume within fourteen days, but obtained an extension of time from most of their creditors; one creditor withheld assent, and petitioned to have the firm adjudged bankrupt, to which one member of the firm made answer of denial, the other member making default. *Held*, that such suspension was not, under the circumstances, an act of bankruptcy. Mere insolvency is not of itself an act of bankruptcy.

[Cited in Hercules Mut. Life Assur. Soc., Case No. 6,402; Re Clemens, Id. 2,878.]

This was a proceeding [in bankruptcy] on the part of J. P. Doan, as petitioning creditor of the firm of Compton and Doan, to have the firm adjudged bankrupts. No opposition was offered by Thomas C. Doan of the firm, but Richard J. Compton, his copartner, filed answer denying the acts of bankruptcy alleged in the petition.

George P. Doan, for petitioner.
Slayback & Spencer, for respondents.

TREAT, District Judge. It appears that, pending negotiations for an extension of defendants' paper, they returned to the vendors a piano, which had been bought to fill a special order, and was somewhat damaged during its transportation. The party for whom the same was designed refused to purchase it when it arrived. The action of the defendants in returning the same was no act of bankruptcy, as charged, but an entirely proper course of proceeding. It was returned with no view of giving a preference or of defrauding creditors, but as a prudent and proper business transaction.

The other ground alleged in the creditor's petition, is the defendants' suspension of their commercial paper, and the nonresumption thereof within fourteen days. Courts differ in the construction of the act on that point; some holding a fraudulent suspension necessary, and others not. This court has followed the latter construction, but not in the literal or arbitrary sense urged in behalf of the petitioning creditor. When a trader fails generally to meet his commercial paper according to the usual course of business—that is, suffers not some, but all, as it matures, to go to protest, or in other words, comes to a general suspension, as unable to proceed further with his business—then his creditors may, through the bankrupt act, compel an adjudication and distribution of his assets. The mere fact of insolvency is not decisive. He may procure renewals or extensions, and thus, with the assent of his creditors, continue for their and his benefit. If all of his creditors assent to extensions or renewals, none of them can proceed against him; if a part consent thereto, the residue are benefited, for their demands can be enforced by ordinary legal proceedings. Thus, if in this case, all the creditors except the petitioners had unqualifiedly, each for himself, agreed to an extension for one year or more, then the defendants would have had no outstanding obligation enforceable against them at the present time, except the petitioner's, and, consequently, he could have recovered his dues by ordinary process. Many of the creditors agreed to the desired extension unqualifiedly; one or more with the qualification that all should join. The petitioner, though at first willing to join, concluded not to do so for reasons developed at the hearing. Negotiations were had between the several parties in interest, the creditors and partners, and inter sese between the partners. An honest difference of opinion existed, and reasonably, as to the ultimate success and existing solvency of the co-partnership. If any of these negotiations had been successfully terminated, this suit would probably not have been instituted. This case, therefore, is one where partners, with reasonable cause to believe that by a little indulgence they can make their comparatively new undertaking a decided success, consult freely with each other and their creditors, and being induced to suppose full assent would be had to the desired extension, suffer the payment of some —and it may be the larger part—of their commercial paper to be suspended for more than fourteen days; a suspension fully justifiable under the circumstances, for the payment of one would have been a preference given to that one. It may be the petitioner was justified in his opinion, that the business never could succeed; but that does not make the defendants guilty of an act of bankruptcy. Other creditors, and at least one of the defendants, thought otherwise. True, the peculiar relationship of the petitioner to the co-partnership might make him more anxious and sensitive, but he is before the court simply as a creditor of the co-partnership.

The provision in the bankrupt act [of 1867 (14 Stat. 536)] concerning the suspension of commercial paper has no just application to the case presented—is designed to work no such harsh or oppressive result as to enable one creditor, against the wishes of a majority or of all others, to compel a struggling trader who has fair prospects of success or believes he has, to surrender his effects, to the manifest injury of all concerned. If the trader meets his paper generally by renewals or extensions, and some one creditor does not grant the desired renewal or extension, but proceeds to enforce his demand at once, the latter is really benefited by the indulgence shown by the others, for he may thus make his money by ordinary suit at law. He cannot, however, under any provision of the existing bankrupt act, proceed to collect his personal claim through its agency. If as a creditor he makes his demand by a common law action, the advantage thus acquired by his diligence he will be permitted to retain. It must not be supposed that the bankrupt act is for the collection of ordinary debts; or that a creditor can force a debtor into bankruptcy for any other than the causes named in the act. Mere insolvency is not, of itself, ground for involuntary bankruptcy;

for a man actually insolvent may continue his business for years, by renewals, and extensions, and indulgence on the part of his creditors, and ultimately not only pay all indebtedness, with interest, but achieve success. His peculiar business may be such that if arbitrarily stopped by one creditor, debtors and creditors alike will be involved in a useless sacrifice, while continuance in business will be for the common benefit. If the design of the law is equality, why should one creditor, against the wishes of all others, involve all in an unwished for and, it may be, needless sacrifice? Why not take his ordinary remedy, leaving the others to pursue their own course?

In this case the court holds that there was no violation of the act in the return of the piano mentioned, and no such suspension of the commercial paper of defendants as constitutes an act of bankruptcy under the law. The petition is against two co-partners, one of whom is in default, and the other of whom contests; and as the co-partnership or both partners must be guilty under the act before judgment can be entered, the petition must be dismissed with costs. Voluntary and involuntary proceedings depend on distinct principles.

The following views expressed by the court in Jones v. Howland, 8 Metc. [Mass.] 385, meet the full approval of this court: "The doctrine, we think, is correctly and clearly laid down by Gibbs, C. J., in the case of Fidgeon v. Sharpe, 5 Taunt. 539. He observes that 'the general effect of the statutes on the subject of bankrupts is, that all payments made before bankruptcy are legal and valid; but a certain class of cases has arisen in which certain payments have been supposed to be made in fraud of the bankrupt laws, and are therefore fraudulent and void. But I find in all the cases, from Fordyce's to the present, the fact found that the act was done in fraud of the bankrupt laws. It must be an act, then, not only that in effect contravenes the bankrupt laws, but it must be done with intent to contravene them and in contemplation of bankruptcy. The innocence or guilt of the act depends, then, on the mind of him who did it; and it cannot be in fraud of the bankrupt laws unless the actor meant it should be so.' See, also, Hartshorn v. Slodden, 2 Bos. & P. 582; Morgan v. Brundrett, 5 Barn. & Adol. 289; Gibbins v. Phillipps, 7 Barn. & C. 529; Atkinson v. Brindall, 2 Bing. N. C. 225, and 2 Scott, 369; Belcher v. Prittie, 10 Bing. 408. The result of these cases is the drawing of a distinction between an actual insolvency and a contemplated bankruptcy; between the payment of a just debt in the course of business, though insolvency exists and is known to the insolvent, and the design to give a preference in view of stopping payment. And in view of all the authorities we hold the law to be this: That though insolvency in fact exists, yet if the debtor honestly believes he shall be able to go on in his business, and, with such belief, pays a just debt without a design to give a preference, such payment is not fraudulent, though bankruptcy should afterwards ensue. And on the other hand, if the debtor, being insolvent, and knowing his situation, and expecting to stop payment, shall then make a payment or give security to a creditor for a just debt, with a view to give him a preference over the general creditors, such payment or giving security is fraudulent as against the creditors, and property that is transferred in making such payment, or giving the security, may be recovered by the assignee; and the debtor will not be entitled to a discharge under the statute. It rests upon the intent with which the act was done; and the intent is to be proved, as a fact, either by direct evidence, or the necessary and certain consequence of other facts clearly proved. In respect to the charge of the judge in the case at bar, it will be found, when carefully examined, to express the opinion that the fact of insolvency being proved, and a knowledge of it on the part of Stowell, the debtor, the jury were bound to infer the intention of Stowell to make a fraudulent preference, because he must be held to have intended the natural result of his own act; and consequently, that his act was in fraud of the bankrupt law. This direction, though in accordance with opinions of the court in Poland v. Glyn [Case No. 11,243], and Pulling v. Tucker [Id. 11,464], is, we think, broader than is warranted by the cases of Fidgeon v. Sharpe, Morgan v. Brundrett, and Atkinson v. Brindall [supra], which, as before observed, we think, lay down the law correctly. The charge assumes, as a fact, the very thing which is to be proved, namely, the intent which actuated the debtor at the time of making payment; whereas, insolvency may be known to exist, and yet the debtor, though compelled to make sacrifices, be determined to go on in his business, and not yield to the pressure, and thus make payment without any intention of giving a preference in contemplation of bankruptcy. Such instances are not of very rare occurrence; and such intent should have been more freely submitted to the jury. It is said that a man must be supposed to intend the natural result of his act. But this remark, though often treated as an axiom, is by no means an infallible proposition. The result is not always evidence of the supposed intent. When we look back upon events that have happened, we stand in a different position; we behold with a clear vision, as we embrace within one glance the beginning and the end, the act and the consequence. But the man who is doing the act may contemplate a very different result. His judgment may be biased by his wishes, and sanguine feelings may be the cause of overlooking difficulties which to a more quiet temperament might appear insurmountable. Disappointments may also take place which were not anticipated. The expe-

rience of others is rarely a guide to an embarrassed man, and he goes on with the hope of relief, even against hope. To infer, therefore, a design to give a preference to a favored creditor, and in the immediate expectation of bankruptcy, from the mere fact of insolvency, is by no means a certain inference, nor such as the jury would be necessarily bound to draw from the debtor's knowledge of his insolvency. The evidence must also go further, and establish, as a fact, the design to give the preference—a fact too important to be left upon conjecture. The instruction requested by the counsel for the defendants was substantially correct. With some slight modification, it may be stated as follows: That if, on the 8th day of March, Stowell feared or believed himself to be insolvent, but did not contemplate stoppage or failure, and intended to keep and make his payments, and transact his business, hoping that his affairs might be thereafterwards retrieved, and in that state of mind made the sale or payment on that day, without intending to give a preference to the defendants, and as a measure connected with going on in the business, and not as a measure preparatory to or connected with a stoppage in business, then the sale or payment on that day was not a sale or payment made in contemplation of bankruptcy within the meaning of the act. It is insisted by the counsel for the plaintiff, that the case of Arnold v. Maynard [Case No. 561] is directly in point to sustain the instructions which were given to the jury. And it is true that the reasoning there does go to support the cases which the later English authorities say have carried the doctrine of contemplation of bankruptcy too far. But the case itself, though with some features of similarity, is founded upon a very different statement of facts, and in which the design to give the preference is not drawn into doubt, and the answers to the question referred to the court do not advance a doctrine different from that which we think is correct. A similar question has arisen before the United States district court in Vermont. In Re Pearce [Id. 10,873] the learned judge held, that 'it is not a necessary and legal inference that a conveyance was made in contemplation of bankruptcy, merely because the debtor was insolvent at the time; but it must appear that the conveyance was made by the debtor in anticipation of breaking or failing in his business; of committing an act of bankruptcy, or of being declared bankrupt at his own instance and intending to defeat the general distribution of his effects.'" And with this we fully concur.

DOANE (AVERY v.). See Case No. 673.

DOANE (FLAHERTY v.). See Case No. 4,849.

DOANE (PENHALLOW v.). See Case No. 10,925.

DOANE, The MARY. See Case No. 9,205.

DOANE, The RICHARD. See Case No. 11,765.

DOBBIE (WILKINSON v.). See Case No. 17,670.