JOHN W. FAIRBANKS & others *vs.* AUSTIN BELKNAP & others.

Suffolk. Jan. 22. — June 20, 1883. FIELD & W. ALLEN, JJ., absent.

A partnership made an agreement with its creditors, by which all creditors whose claims exceeded a certain sum extended the time of payment of their claims by accepting therefor the notes of the partnership payable in one, two and three years, and all other creditors were paid in full. It was further agreed that all the assets of the firm and of the individual members thereof should be conveyed to a committee named, or one member thereof in trust for all; and the assets were accordingly conveyed to two persons in trust for the committee. The committee was to have authority to apply the individual assets to the payment of the individual debts, and the firm assets and any surplus of individual assets that might remain after the payment of individual debts to the purposes of the business, at their discretion. It was further provided that the firm should carry on its business, with the advice and under the direction of the committee named, and that all debts contracted with the approval of the committee in carrying on the business should be entitled to payment before any payment was made upon the notes given under the agreement, and the committee was authorized to pay the same in any event out of the assets of the firm. After the execution of the agreement and the conveyance of the property to the committee, the firm proceeded to carry on the business for about a year under the direction of the committee; and, with its approval, contracted debts to a considerable amount, the creditors holding such debts giving credit to the firm and relying upon the provision above recited. Toward the end of the year, finding that it was doing business at a loss, the firm and its members went into insolvency, and assignees of their estates were appointed. *Held*, that a bill in equity, by the members of the committee, stating the above facts, and alleging that the assignees in insolvency demanded of the plaintiffs that they should turn over to them all the property of the firm or its members which remained in their possession, and that the creditors whose debts were contracted while the business was carried on under the terms of the agreement, who had not been paid, demanded of the plaintiffs that they should apply the assets of the firm to the payment of their claims, stated a case within the equity jurisdiction of the court.

DEVENS, J. This is a bill in equity, and, although it is termed a bill for instructions, it is rather one in the nature of an interpleader. Its object is not so much to ascertain what are the duties of the trustees in the performance of their trust, as to have it decided whether they are not now to abandon the execution of the trust they have assumed, and surrender the property, on which it was charged, to the assignees in insolvency of the debtors, by whom it was conveyed to them; and especially whether, inasmuch as debts have been contracted since the property was conveyed to them, they may not now retain the property so far as it is necessary in order to liquidate such debts and devote it to that purpose.

The facts, as alleged in the bill as amended, are substantially these: In October, 1877, the Union Wharf Company, which was a copartnership composed of several individuals, made an agreement with the firm creditors, by which all those whose claims exceeded $150 extended the time of payment of their claims by accepting therefor the notes of the partnership payable in one, two and three years, and all others were paid in full. To this arrangement, which was not to be binding otherwise, all the creditors of the firm assented. The smaller creditors were paid in full, and notes were given to the other creditors, as agreed. It was further agreed that all the assets of the firm and of the individual members thereof should be conveyed to a committee named, or one member thereof in trust for all; and they were in fact conveyed to the two plaintiffs Fairbanks and Sewall, in trust for the committee. The committee was to have authority to apply the individual assets to the payment of the individual debts, and the firm assets and any surplus of individual assets that might remain after the payment of individual debts to the purposes of the business, at their discretion. It was further provided that the firm should carry on its business with the advice and under the direction of the committee named, and that all debts contracted with the approval of the committee in carrying on the business should be entitled to payment before any payment was made upon the notes given under the agreement, and the committee was authorized to pay the same, in any event, out of the assets of the firm. After the execution of the agreement by all the creditors of the firm, and the conveyance of the property of the firm and of the individuals composing it to two of the committee, as above stated, the firm proceeded to carry on the business, and did so for about a year, under the direction of the committee; and, with its approval, contracted debts to a considerable amount, the creditors holding such debts giving credit to the Union Wharf Company and relying upon the provision above recited. Toward the end of the year, finding that it was doing business at a loss, the firm and its members went into insolvency, and the defendants Belknap and Johnson were appointed assignees of their estate. The assignees in insolvency now demand of the plaintiffs that they shall turn over to them all the property of

the firm or of its members which remains in their possession, while the creditors, whose debts were contracted while the business was carried on under the terms of the agreement, who have not been paid, demand of the plaintiffs that they should apply the assets of the firm to the payment of their claims.

Being of opinion that the bill as amended did not state a case within the equity jurisdiction of the court, the justice of this court before whom it was heard ordered that it should be dismissed, and reserved the question for the full court, upon the bill, the amendment thereof, the answers and replication. The answers and replication are not important, although thus included in the reservation, except as they raise the question whether the bill is demurrable. There are no findings before us as to the facts affirmed and denied by them respectively, so that they can be passed upon judicially. According to the terms of the reservation, if the bill as amended states a case within the equity jurisdiction of the court, the defendants are to have leave to answer the amendment; otherwise, the bill is to be dismissed.

The inquiry at this stage of the case, therefore, is not so much as to the validity of the claims made on behalf of subsequent creditors, as whether such a state of facts is alleged to exist as entitles the trustees to require that the holders of the conflicting claims shall present them, in order that their respective merits may be passed upon and the duties of the trustees ascertained. It may be that all the facts upon which the claims of the respective parties will be finally determined are not now brought before us. While, therefore, the validity of the conveyance made to the trustees of the property of the firm and of its members, and its effect on the rights of creditors whose debts were subsequently incurred by the authority of the committee, have been fully discussed, it would be premature to pass upon them definitely, any further than is necessary to decide whether the bill states a case within the equity jurisdiction of the court.

That this court has jurisdiction of suits and proceedings in equity for enforcing and regulating the execution of trusts, will not be disputed; Gen. Sts. *c.* 113, § 2; and this jurisdiction has been repeatedly exercised. *Dimmock* v. *Bixby*, 20 Pick. 368. Where there are conflicting claims by different parties to the same property or rights under the instrument by which the

trust is created, the trustee is entitled to the aid and direction of the court by a bill framed for that purpose. *Treadwell* v. *Cordis*, 5 Gray, 341. Where there are conflicting claims to a trust estate, the trustee, by filing a bill in the nature of a bill of interpleader, to which he makes parties those who claim to have an interest in the trust estate, can ask the direction of the court as to the proper mode of administering the trust, and can also be protected in the disposal of the property in his hands. *Treadwell* v. *Salisbury Manuf. Co.* 7 Gray, 393, 400.

The principal ground upon which the jurisdiction is denied is that the bill sets forth a plan for the management of the property and business of the Union Wharf Company which it is alleged is opposed to the insolvent laws of this Commonwealth, and is illegal and void; and that therefore the assignees in insolvency are at once entitled to all the estate held by the committee who are the trustees under it. This conveyance was made at a time when the insolvent laws of this Commonwealth were suspended by the operation of the bankrupt law. But we test it by those laws, which are now revived by the repeal of the bankrupt law, and treat it as if they had never been suspended. *Lothrop* v. *Highland Foundry Co.* 128 Mass. 120. The transfer of the property was made more than six months before the filing of the petition in insolvency; Gen. Sts. *c.* 118, § 89; and it is evident that the debtors did not then intend to take the benefit of the insolvent laws. Gen. Sts. *c.* 118, § 88. There could be no fraudulent preference intended when the same security was offered to all, and when the plan was to be accepted by all or to be inoperative. It was a plan by which the debtors were permitted to continue their business, all the firm creditors assenting to an extension of time in the payment of their debts. It was a necessary consequence, if the business was continued, that new debts must be incurred, and apparently the only means of obtaining credit was by subjecting the property conveyed to the trustees to such debts, if they were incurred by consent of the committee in whose hands the property was placed. Nothing appears which tends to show that the rights of creditors of individuals of the firm were affected or diminished by this plan, which primarily had relation only to the firm property. The trust had three principal objects, the protection of the property

for the benefit of the old creditors against any wrongful use by the debtors, or appropriation by any single creditor; the application of it to the purposes of the business at the discretion of the committee; and the payment from the assets of the firm of the debts which were thereafter contracted by the Union Wharf Company with the approval of the committee. We are not prepared to say that this plan was in any such respect against the spirit or the policy of the insolvent laws that we should not consider what rights were conferred by the operation of it upon such subsequent creditors. When all the firm creditors assented to such an arrangement, there would seem to be no ground of complaint by any on account of acts done or liabilities incurred under and by virtue of it. *Volenti non fit injuria. In re Union Pacific Railroad,* 10 Nat. Bank. Reg. 178, 181. *Doan* v. *Compton,* 2 Nat. Bank. Reg. 607. *Foster* v. *Saco Manuf. Co.* 12 Pick. 451. *Hendricks* v. *Robinson,* 2 Johns. Ch. 283.

We are therefore of opinion, that, upon the allegations of the bill, which set forth the plan for continuing the business made by the agreement between the debtors and their existing creditors, and the claim of the subsequent creditors, it cannot be held that the bill fails to state a case within the equity jurisdiction of the court, because of any violation of the insolvent laws involved in the transaction.

Nor is it an objection to the bill, that the claims of the subsequent creditors must be pursued in equity, so far as is necessary to compel the trustees to appropriate the trust property to the payment of them, when their amount shall be ascertained, and when it shall be determined that the debts were contracted by the Union Wharf Company with the consent of the committee of creditors, while the claim of the assignees is one for the property itself, to be pursued at law. The embarrassment to the trustees is not less, nor are the claims of the different parties less conflicting, because the remedies they are entitled to seek are to be found in different tribunals. *Morgan* v. *Marsack,* 2 Meriv. 107. *Angell* v. *Hadden,* 15 Ves. 244. *Richards* v. *Salter,* 6 Johns. Ch. 445. *Farley* v. *Blood,* 30 N. H. 354. *Newhall* v. *Kastens,* 70 Ill. 156.

It is a general principle, that, where two or more persons claim the same debt, duty or property in the possession of a third person,

who does not know to which of the claimants he ought of right to render the debt or duty, or to deliver the property in his custody, and fears that he may be exposed to distinct controversies, he may file against them a bill in equity in the nature of a bill of interpleader. *Child* v. *Mann*, L. R. 3 Eq. 806. *Bedell* v. *Hoffman*, 2 Paige, 199. *Bell* v. *Hunt*, 3 Barb. Ch. 391. *Providence Bank* v. *Wilkinson*, 4 R. I. 507. *Farley* v. *Blood, ubi supra. Mohawk & Hudson Railroad* v. *Clute*, 4 Paige, 384, 392. But it is suggested that it will not here lie, as the adverse titles asserted to the property are distinct and independent, and bills in the nature of interpleader are not intended for the trial of such conflicting titles. A bill of interpleader certainly cannot be filed so as to make a person a party thereto in respect to whom the plaintiff has put himself in such a position that he is not authorized to dispute his title. It cannot be filed by a tenant so as to make his landlord a party thereto, or by an agent so as to summon in his principal, when a distinctly adverse title is asserted against him. He must defend the title he has received from his landlord or his principal in the ordinary way. The office of such a suit is to protect a party, not against a double liability, but against a double vexation on account of one liability. *Crawford* v. *Fisher*, 1 Hare, 436. Where, therefore, a title paramount to that under which a party consented to receive property is asserted, he cannot cause his principal and the holder of such title to interplead by a bill framed for that purpose. *Nickolson* v. *Knowles*, 5 Madd. 47. *Cooper* v. *De Tastet*, Tamlyn, 177.

In *Crawshay* v. *Thornton*, 2 Myl. & Cr. 1, and 1 Jur. 19, A. had deposited certain iron with B. and Co., who were wharfingers, and had afterwards directed them to deliver it to C. B. and Co. notified C. that they held it at his disposal. B. and Co. subsequently received notice from D. that the iron belonged to him, had been deposited with A. for sale, and had been wrongfully pledged to C. B. and Co. then filed a bill of interpleader against C. and D., but it was held that it could not be maintained. In *Pearson* v. *Cardon*, 4 Sim. 218, and 2 Russ. & Myl. 606, the expression which is attributed to Lord Chancellor Brougham, that, admitting the plaintiffs to be agents of one party, and that there was a claim made by another under a paramount title, interpleader might be maintained, is deemed by Lord Cottenham,

in *Crawshay* v. *Thornton,* to have been wrongly reported, as he states that, according to Lord Brougham's notes, it appears that the adverse title asserted was a derivative, and not a paramount title.

When, after the transfer of property, the grantor does any act, or his property is placed in any position, which occasions embarrassment, the right of the holder or trustee of the property would then arise to file such a bill. He would be entitled to ask whether the title conveyed to him had not terminated by the act of the grantor, or by his then existing position in relation to the property, and cause those to interplead who are respectively interested under the conveyance made to him and under that afterwards made, by reason of facts which have subsequently occurred. It thus follows that, when the adverse titles are all derived from the one title under or by which the plaintiff originally held the property, he is entitled to file a bill of interpleader against the respective holders of such titles. *Providence Bank* v. *Wilkinson, ubi supra. Bell* v. *Hunt, ubi supra.*

A sheriff, who has seized property on execution, cannot file a bill of interpleader against the execution creditor and a third person claiming the property as his own, and not that of the execution debtor, but must defend or abandon the title he has undertaken to assert. *Shaw* v. *Coster,* 8 Paige, 339. But he may file such a bill against the assignee in bankruptcy and the execution creditor, when it is doubtful whether, as against the latter, the property passed by the assignment. The title of each in the latter case is derived from that of the execution debtor. *Child* v. *Mann, ubi supra.*

Where one of the parties defendant in a bill of interpleader was a religious society, and the other the heirs at law of a testator, it was held that they might compromise without regard to the wishes of the plaintiff, who was executor, and who would be directed to pay accordingly, and no suggestion was made that the bill was not properly brought. The title of each party was derived from the testator. *Horton* v. *Chester Church,* 34 Vt. 309.

The application of this principle to the case at bar is obvious. There is here no adverse paramount title asserted. Those whom

the plaintiffs desire to interplead derive their rights alike from the original debtor, the Union Wharf Company. On the one side, certain creditors subsequent in time to the conveyance to the plaintiff trustees assert rights in the property of the debtor as beneficiaries, and ask its appropriation to the payment of their debts; while the assignees, by virtue of the assignment in insolvency to them of the debtor's property, claim it as discharged from any supposed trust. The inquiry is therefore as to the validity and effect of the agreement by which the property was conveyed to trustees, and their duties in view of subsequent events.

We have not discussed all the matters alleged in the bill, especially the claim asserted to be made on behalf of the Seamen's Savings Bank, that the trustees shall pay their debt out of the individual assets of Amos Nickerson. If the bill is complicated or multifarious, as to which we express no opinion, these defects may be removed by amendment. The only question we have sought to determine is whether any subject matter is presented by it, even if imperfectly, which shows a case within the equity jurisdiction of the court. If the plaintiffs are entitled to instructions, and to have the parties interplead as to some of the matters alleged, if not as to all, the bill should not be dismissed.           *Case to stand for hearing.*

*R. Stone*, for the plaintiffs.

*H. L. Harding*, for subsequent creditors.

*J. M. Day*, for the assignees in insolvency.